**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **CLAYTON WILSON,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **CA No. 07-053S** |
| | : | |
| **UNITED STATES OF AMERICA, UNITED STATES DEPARTMENT OF THE NAVY, TRITON MARINE CONSTRUCTION CORP., and THE HASKELL COMPANY,** | : | |
| | : | |
| **Defendants** | : | |

**DEFENDANTS UNITED STATES OF AMERICA'S AND UNITED STATES DEPARTMENT OF THE NAVY'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(1)**

On February 20, 2007, Plaintiff Clayton Wilson filed the Amended Complaint in this negligence action naming as Defendants the United States of America, the United States Department of the Navy, Triton Marine Corporation and the Haskell Company. Wilson brings his claims against the United States and the Navy pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b) et seq. Presently the United States and the Navy move to dismiss Plaintiff's claims against them in their entirety because: (1) the United States is the sole defendant against which a plaintiff may pursue claims under the FTCA and thus the Navy is not a proper defendant in the case; (2) under the FTCA, liability against the United States can not be premised upon the actions of its contractors, in this case, the actions of Triton Marine; and (3) the United States' decision to delegate responsibility for the maintenance of the construction site where Plaintiff alleges he fell falls within the discretionary function exception to the FTCA. The

bases for the United States' and the Navy's motion are more thoroughly detailed in the accompanying memorandum of law filed simultaneously herewith.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Dulce Donovan
DULCE DONOVAN
Assistant U.S. Attorney
Chief, Civil Division
50 Kennedy Plaza
Providence, RI 02903
(401) 709-5000
(401) 709-5017 (fax)
Email: dulce.donovan@usdoj.gov

CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on the 20th day of April, 2007, I electronically filed the within Defendants United States of America's and United States Department of the Navy's Memorandum in Support of Their Motion to Dismiss Pursuant to Rule 12(B)(1) with the Clerk of the United States District Court for the District of Rhode Island, using the CM/ECF System. The following participants have received notice electronically:

J. Scott Kilpatrick, Esq.
Chisholm Chisholm & Kilpatrick LLP
One Turks Head Place - Suite 1313
Providence, RI 02903

/s/ Dulce Donovan
DULCE DONOVAN
Assistant U.S. Attorney
Chief, Civil Division
United States Attorney's Office
Fleet Center
50 Kennedy Plaza, 8th Floor
Providence, Rhode Island 02903
(401) 709-5000
(401) 709-5017 (Fax)
Email: dulce.donovan@usdoj.gov

**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **CLAYTON WILSON,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **CA No. 07-053S** |
| | : | |
| **UNITED STATES OF AMERICA, UNITED STATES DEPARTMENT OF THE NAVY, TRITON MARINE CONSTRUCTION CORP., and THE HASKELL COMPANY,** | : | |
| | : | |
| **Defendants** | : | |

**DEFENDANTS UNITED STATES OF AMERICA'S AND UNITED STATES DEPARTMENT OF THE NAVY'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PURSUANT TO RULE 12(B)(1)**

## I. Introduction

On February 20, 2007, Plaintiff Clayton Wilson filed the Amended Complaint in this negligence action naming as Defendants the United States of America, the United States Department of the Navy, Triton Marine Corporation and the Haskell Company. Wilson claims that on February 18, 2004, he fell on the ice at work. Amended Compl. ¶¶ 26-28 (hereinafter "Compl."). At the time, Wilson was working for MacKenzie Service Corporation, a subcontractor of Haskell. Haskell was a subcontractor of Triton, with whom the Navy had contracted to design and build a new Surface Warfare Officer School (SWOS) at the Naval Station in Newport, Rhode Island. Id. ¶¶ 12, 13, 23. Wilson asserts that all four Defendants were negligent in failing to maintain the pathways outside the SWOS free of snow and ice. Counts I and II of the Amended Complaint assert claims for negligence and breach of contract

against Triton, Count III alleges a claim for negligence against Haskell, and Count IV alleges claims of negligence against the United States and the Navy (the "Federal Defendants") pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b) et seq. Wilson claims that the Federal Defendants were negligent in failing to oversee the safety of the site and in failing to maintain the site.

Presently, the United States and the Navy move to dismiss Plaintiff's claims against them in their entirety because: (1) the United States is the sole defendant against which a plaintiff may pursue claims under the FTCA and thus the Navy is not a proper defendant in the case; (2) under the FTCA, liability against the United States can not be premised upon the actions of its contractors, in this case, the actions of Triton Marine; and (3) the United States' decision to delegate responsibility for the maintenance of the construction site where Plaintiff alleges he fell falls within the discretionary function exception to the FTCA. The bases for the United States' and the Navy's motion are detailed below.

## II. Factual and Procedural Background

The following facts are based on the allegations in the Amended Complaint, Triton's and Haskell's Answers and exhibits submitted in conjunction with the Federal Defendants' Motion to Dismiss.[1]

On or about April 11, 2002, the Navy entered into a contract with Triton Marine

---

[1] In reciting Wilson's allegations, the United States in no way concedes their veracity. In addition, matters outside the pleadings can be presented to and considered by the court in ruling upon a motion to dismiss for lack of subject matter jurisdiction. See Gonzales v. United States, 284 F.3d 281, 288 (1st Cir. 2002); Dynamic Image Technologies, Inc. v. United States, 221 F.3d 34, 37 (1st Cir. 2000). "District courts have wide discretion to determine which procedures to employ in resolving the jurisdictional issue." Bank One, Texas, N.A. v. Montle, 964 F.2d 48, 51 (1st Cir. 1992).

Construction whereby Triton was to design and build a new SWOS at the Naval Station in Newport. Compl. ¶¶ 12, 21; Attach. A, Decl. of David Berger ¶¶ 3 & 4 (hereinafter "Attach. A"), Ex. 1.[2] Triton subcontracted design and construction of the project to Defendant Haskell. Compl.¶ 13; Attach. A, ¶ 15. Thereafter, Haskell hired MacKenzie Service Corporation as a painting subcontractor on the project. Compl. ¶ 24; Attach. A,¶ 5. See also Def. Haskell's Answer to the Amended Compl. ¶ 13. During the relevant time period, Wilson was an employee of MacKenzie. Compl. ¶ 25.

On or about February 18, 2004, at the end of his work day, approximately 10 to 15 feet outside the SWOS[3], Wilson fell due to an accumulation of snow and ice. Compl. ¶¶ 26-28. As a result, Wilson suffered severe and permanent injuries. Id. ¶ 29.

The Amended Complaint alleges that pursuant to its contract with the Navy, Triton "agreed to and had an obligation and/or duty to comply with all the pertinent provisions of the U.S. Army Corps of Engineers Safety and Health Requirements Manual, EM 385-1-1." Id. ¶ 18. Further, the Amended Complaint avers that "[p]ursuant to EM 385-1-1, Section 21.A.13, Triton was required to inspect access ways daily and maintain the same in a safe manner, including,

---

[2] The Triton contract is approximately 150 pages long. In conjunction with their motion to dismiss, the Federal Defendants have only submitted those pages which are relevant to the arguments it raises in their motion.

[3] Although in the Amended Complaint, Wilson identifies the "Submarine Simulator Building (SSB)" as the subject of the construction contract with Triton and the site of his fall, there is no SSB in Newport. Attach. A, ¶ 16. Plaintiff's Report of Injury submitted in conjunction with his Worker's Compensation Claim lists 1362 Taylor Drive, Newport, Rhode Island, as the location of his accident. Id. ¶ 17, Ex. 7, Box 8. 1362 Taylor Drive in Newport is the location of the SWOS Building. Id. ¶ 16. The SWOS Building was the building which the Navy contracted Triton to build, which Triton subcontracted the Haskell Company to construct, and which Haskell subcontracted MacKenzie to paint. Id. ¶¶ 3, 5. See also Def. Haskell's Answer to the Amended Compl. ¶ 24.

specifically, keeping the access ways free of ice and snow." Id. ¶ 19.

On or about February 2, 2006, Wilson filed an administrative claim with the Navy claiming $300,000 in damages. At the time of filing the instant action, the Navy had not acted on Wilson's administrative claim. Id. ¶¶ 6-7.

## II. Argument

### A. Law Governing Motions to Dismiss for Lack of Subject Matter Jurisdiction

Federal Defendants maintain that Wilson's claims are subject to dismissal because sovereign immunity bars his causes of action against the United States and the Navy. The defense of sovereign immunity challenges the Court's jurisdiction to entertain Wilson's case. United States v. Mitchell, 463 U.S. 206, 212 (1983) (court lacks jurisdiction absent clear waiver of sovereign immunity). Once subject matter jurisdiction has been questioned, it is the plaintiff's burden to establish, by competent proof, that jurisdiction in fact exists. See Pejepscot Industrial Park, Inc. v. Maine Central Railroad Co., 215 F.3d 195, 200 (1st Cir. 2000); Murphy v. United States, 45 F.3d 520, 522 (1st Cir.1995); Bank One Texas, N.A., 964 F.2d at 50. "No presumption of truthfulness attaches to the [plaintiff's] allegations [of jurisdiction]." Media Duplication Services, Ltd. v. HDG Software, Inc., 928 F.2d 1228, 1235 (1st Cir. 1991).

Matters outside the pleadings can be presented to and considered by the court in ruling upon a motion to dismiss for lack of subject matter jurisdiction. See Gonzales v. United States, 284 F.3d 281, 288 (1st Cir. 2002); Dynamic Image Technologies, Inc. v. United States, 221 F.3d 34, 37 (1st Cir. 2000); Miller v. George Arpin & Sons, Inc., 949 F. Supp. 961, 966 n. 8 (D.R.I. 1997) ("A court may consider affidavits, deposition testimony, and other extra-pleading material to determine whether subject matter jurisdiction exists."). "District courts have wide discretion to

determine which procedures to employ in resolving the jurisdictional issue." Bank One, Texas, N.A. v. Montle, 964 F.2d at 51.[4]

### B. The Navy Must Be Dismissed Because the FTCA Precludes Suits Against Military Departments

Count IV of the Amended Complaint names the United States and the Navy in Wilson's negligence claim under the FTCA. The only proper defendant in a FTCA suit is the United States. See 28 U.S.C. §§ 1346(b), 2674, 2679. Indeed, the FTCA specifically precludes suits against military departments. Id. §§ 2671, 2679(a). Accordingly, Wilson's claims against the Navy must be dismissed.

### C. The Independent Contractor Exception to the FTCA

The United States is immune from suit except in instances where it has consented to be sued. United States v. Testan, 424 U.S. 392, 399 (1976). The FTCA waives sovereign immunity for certain tort claims arising out of federal employees' actions taken within the scope of their employment. 28 U.S.C. §§ 1346(b), 2674. The provisions of the FTCA set the limits of the Court's jurisdiction over tort suits brought against the United States. See United States v. Orleans, 425 U.S. 807, 813-14 (1976).

---

[4] Even if this were a motion to dismiss for failure to state claim, the documents attached hereto could be considered by the Court without converting the instant motion to a motion for summary judgment. "[D]ocuments the authenticity of which are not disputed by the parties; . . . official records; . . . documents central to plaintiffs' claim; or . . . documents sufficiently referred to in the complaint," are not matters outside of the pleadings such as to require conversion of a motion into a summary judgment motion. Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001) (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993) (emphasis added)).

Under the terms of the FTCA, the United States is liable for injuries:

> caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). The FTCA specifically excepts contractors from the definition of "officers or employees of any federal agency." 28 U.S.C. § 2671. It is well-accepted that liability of the United States may not be premised upon the acts or omissions of its contractors. See Orleans, 425 U.S. at 813-14; Logue v. United States, 412 U.S. 521, 526 (1973); Larsen v. Empresas El Yunque, Inc., 812 F.2d 14 (1st Cir. 1986); Hall v. United States, 825 F. Supp. 427 (D.N.H. 1993); Miller, 949 F. Supp. 965-66. Whether the United States is liable for the acts or omission of its employees is determined in accordance with the law of the state where the events alleged occurred, but the question of whether an individual is an employee of the United States is determined in accordance with federal law. Brooks v. A.R. & S. Enterprises, Inc. 622 F.2d 8, 10 (1st Cir. 1980). In this case, because Triton was an independent contractor of the Navy, pursuant to the terms of the FTCA, Wilson may not sue the United States since the alleged negligence of which he complains is not attributable to the United States.

**D. Triton Was an Independent Contractor of the Navy**

On December 11, 2000, the Navy issued a document entitled "Solicitation, Offer, and Award" relating to contract number N62472-00-D-0800 to conduct "new construction, alteration, renovation, maintenance, demolition and design build projects" relative to various Naval construction projects in the Northeastern part of the United States. On June 5, 2000, Triton became the designated offeror on the contract. Compl. ¶¶ 11, 12, 21; Attach. A, ¶ 3, Ex. 1 at 2,

box 14.

Subsequently, on April 11, 2002, the Navy sent a formal award letter to Triton, Ex. 8, and issued Task Orders to Triton for specific construction projects. Task Order Number 3 was for the SWOS at the Naval Station in Newport. Attach. A, ¶ 4, Ex. 5. Task Order Number 3 specifically incorporates all the terms of the original contract. Id.

The contract dictated that Triton was responsible for "superintend[ing]" the work at the site:

> At all times during performance of this contract and until the work is completed and accepted, the Contractor shall directly superintend the work or assign and have on the worksite a competent superintendent who is satisfactory to the Contracting Officer and has authority to act for the Contractor.

Attach. A, ¶ 5, Ex. 1, at 122, Section 52.236-6. This superintendent reported to Triton's General Manager for the contract who was to be the "focal point for all work and shall be responsible for all coordination under the contract" and ensuring "compliance with all provisions of the contract." Attach. A, ¶ 8, Ex. 1 at 26. The contract required Triton to procure and maintain during the entire period of performance under the contract a minimum comprehensive general liability coverage of $500,000 per occurrence. Attach. A, ¶ 9, Ex. 1 at 10-17.

The contract also specifically provided that Triton would be required to comply with the pertinent provisions of the U.S. Army Corps of Engineers Safety and Health Requirements Manual, EM 385-1-1. Compl. 18; Attach. A, ¶ 10, Ex. 1 at 122. The EM 385-1-1, dated September 3, 1996, in effect at the time provided that "[a]cessways shall be inspected daily and maintained in a safe manner" and that they shall be "kept free of ice, snow, grease, mud, debris or any other material equipment which could obstruct passage, cause a tripping hazard, or render

them unsafe in any other way . . . ." Attach. A, ¶ 10, Ex. 2, Section 21.A.13. See also Compl. ¶ 19. The "Accident Prevention" section of the contract further provided that the contractor was required to ensure that any additional measures the contracting officer determines to be reasonably necessary for the purposes of the construction were taken. Attach. A, ¶ 11, Ex. 1 at 91, Section 52.236-13 ¶(b)(3). The contract specified that as part of these additional measures, Triton was to develop "Project Safety Procedures" for the contract. Id. In July 2002, Triton and the Haskell Company submitted "Project Safety Procedures" which provided that the prime contractor and any subcontractors and vendors were required to comply with the policies in the safety plan as well as the EM 385-1-1. Attach. 1, ¶ 12, Ex. 3, at 2. Section 101, "Responsibility," of the Procedures states:

> Ultimate responsibility for the safety and health of employees working on this project lies with the Project Superintendents. However, as with any effective safety program, every employee involved in this project must assume responsibility for the safety and health of themselves and their co-workers.

Id. at 14.

Pursuant to the terms of the Contract, Triton retained all responsibility for the construction site, including safety at the site, until Triton completed its work and the Navy accepted work completed on the project on March 17, 2004. Attach. 1, ¶ 15, Exs. 4, 9. Thus, as alleged in the Complaint, on February 18, 2004, delegation of supervision and responsibility for the safety and health of employees working on the site were delegated to Triton, the Navy's contractor. Accordingly, Wilson's claim falls outside the scope of Congress's waiver of sovereign immunity under the FTCA and the Court lacks subject matter jurisdiction over Count IV of the Complaint.

**E. The Navy's Selection of a Contractor and Delegation of Safety Responsibility Falls Within the Discretionary Function Exception to the FTCA's Waiver of Sovereign Immunity**

As discussed above, the FTCA is a limited waiver of the federal government's sovereign immunity. One exception to that waiver is for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The exception exists to "protect the discretion of the executive or administrator to act according to one's judgment of the best course and to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy." Wood v. United States, 290 F.3d 29, 36 (1st Cir. 2002) (internal quotations omitted).

Congress has granted to executive agencies, including military departments, the discretion to prescribe reasonable rules and regulations governing the procurement of property and services on behalf of the federal government.[5] See e.g. 41 U.S.C. §§ 403, 404. In order to maintain some consistency in federal government procurement, the administrator of the Office of Procurement Policy has promulgated Federal Acquisition Regulations, 48 C.F.R. § 1.000 et seq. (FARs), which broadly outline procurement policies for the acquisition of goods and services. The regulations reserve broad discretion for local procurement officials to make decisions based on their "professional judgment" to ensure the best value product or service. Id. §§ 1.102, 1.102-1, 1.102-2(c)(2). "Best value" is to be determined from a broad perspective as a result of balancing "competing interests" in an attempt to promote "efficiency" and "maximize resources." Id.

---

[5] The term procurement as used in the Competition of Contracting Act of 1984, includes all stages of the process of acquiring services, beginning with the identification of the need for the service and ending with the completion of the contract. See 41 U.S.C. § 403(2).

1.102-1(b). The regulations dictate that the administrator's job is to manage the risks, not avoid them altogether. See e.g. § 1.102-2(c). In selecting a contractor such as Triton, the Navy is required to consider a variety of factors, including the existence of a potential contractor's safety program. See e.g. 41 U.S.C. § 403(7); 48 C.F.R. §§ 9.104-1, (a)-(e) 9.104-3.

The FARs require that certain provisions be included in any contract, namely, and most relevant to this case, a provision delegating primary responsibility to the contractor to maintain a safe work environment. 48 C.F.R. § 36.513. These clauses include a provision providing that the contractor must comply with all applicable federal safety laws and regulations. 48 C.F.R. § 52.236-13(b)(2). In this case, this included a requirement that Triton comply with the pertinent provisions of the U.S. Army Corps of Engineers Safety and Health Manual. Attach. A, ¶ 10, Ex. 1 at 122, § 52.236-13(c). The FARs allow the contracting officer the discretion to determine the manner in which the contracting officer will oversee the contractor's compliance with these safety requirements. Id. § 1.602-2. The Triton contract also provided that if the contracting officer for the Navy became aware of any noncompliance with the accident prevention requirements under the contract, the contracting officer could notify Triton immediately and request corrective action to be taken. If Triton were to fail to take corrective action, the Navy would have been permitted to issue an order stopping all work on the project. Attach. A, ¶ 11, Ex. 1 at 122.

Count IV of the Amended Complaint alleges that the Navy was negligent in overseeing the safety of the worksite. Compl. ¶ 40. As detailed above, however, the FARs provide that contracting officers be provided with "wide latitude to exercise business judgment" in ensuring adherence to contract terms. 48 C.F.R. § 1.602-2. The FARs do not prescribe the course of

action the Navy must follow in ensuring contractor compliance with safety requirements. In this case, in meeting its obligation to balance the competing factors of quality and the timeliness of the delivered product with minimizing the administrative operating costs of the project, the Navy determined that it would delegate overall responsibility for the safety of the construction site to Triton, retaining for itself the authority to request corrective action be taken upon receiving notice of any health and safety concerns and possibly ordering a work stoppage on the project. The manner in which the Navy determined it would oversee adherence to the contract's safety and health provisions is the type of discretionary function that the exception to the FTCA was meant to include. Wood, 290 F.3d at 41; see also Attallah v. United States, 955 F.2d 776, 784 (1st Cir. 1992) (where statute allows custom agents "room for choice" in carrying out duties, judgment was type falling within discretionary function exception). Indeed, the Navy's decisions regarding safety oversight involve the permissible exercise of policy judgment. See e.g. Shansky v. United States, 164 F.3d 688, 692 (1st Cir. 1999) (where statutory scheme empowered Park Service to balance safety and aesthetics, decision involved type of policy judgments warranting application of discretionary function exception to FTCA); Irving v. United States, 162 F.3d 154, 168 (1st Cir. 1998) (where function is discretionary, presumption exits that acts are grounded in policy when exercising that discretion).

The Navy's decision in this case is similar to that exercised by the Energy Research and Development Administration (ERDA) in Maltais v. United States, 546 F. Supp. 96, 100-01 (S.D.N.Y. 1982), and which the court found fell within the discretionary function exception to the FTCA. In Maltais, the ERDA awarded General Electric (GE) a contract to operate an atomic power lab. Pursuant to the contract, ERDA delegated to GE the responsibility to take reasonable

safety precautions in the performance of work under the contract. 546 F. Supp. at 98-99. The ERDA retained the authority to stop work on the project should GE fail to comply with safety regulations. Id. In addition to finding the plaintiff's negligence suit barred by the independent contractor exception to the FTCA, the Maltais court held that the plaintiff's suit was barred under the discretionary function exception to the FTCA. The court stated "ERDA's reluctance to attempt to monitor day to day safety procedures, while it retains both the right of inspection and the right to stop work if serious violations are reported, demonstrates discretionary policy considerations which required a weighing of various concerns for public safety against administrative impracticability of maintaining large inspection staff." Id. at 101. Similarly, in this case, the Navy's conduct in delegating Triton with the primary authority to enforce adherence to safety standards falls within the discretionary function exception to the FTCA. Accordingly, the United States has not waived sovereign immunity for Wilson's claims that the United States negligently oversaw safety compliance at the site, or negligently maintained the site, and the Court lacks jurisdiction over Count IV of the Amended Complaint.

## IV. Conclusion

Based upon the foregoing, the United States respectfully requests that the Court dismiss Count IV in its entirety.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Dulce Donovan
DULCE DONOVAN
Assistant U.S. Attorney
Chief, Civil Division
50 Kennedy Plaza
Providence, RI 02903
(401) 709-5000
(401) 709-5017 (fax)
Email: dulce.donovan@usdoj.gov

CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on the 20th day of April, 2007, I electronically filed the within Defendants United States of America's and United States Department of the Navy's Motion to Dismiss Pursuant to Rule 12(B)(1) with the Clerk of the United States District Court for the District of Rhode Island, using the CM/ECF System. The following participants have received notice electronically:

J. Scott Kilpatrick, Esq.
Chisholm Chisholm & Kilpatrick LLP
One Turks Head Place - Suite 1313
Providence, RI 02903

/s/ Dulce Donovan
DULCE DONOVAN
Assistant U.S. Attorney
Chief, Civil Division
United States Attorney's Office
Fleet Center
50 Kennedy Plaza, 8th Floor
Providence, Rhode Island 02903
(401) 709-5000
(401) 709-5017 (Fax)
Email: dulce.donovan@usdoj.gov