**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **CLAYTON WILSON,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **C.A. No. 07-053S** |
| | : | |
| **UNITED STATES OF AMERICA, UNITED STATES DEPARTMENT OF THE NAVY, TRITON MARINE CONSTRUCTION CORP., and THE HASKELL COMPANY,** | : | |
| | : | |
| **Defendants** | : | |

**DECLARATION OF DAVID J. BERGER**

I, David J. Berger, make the following declaration under penalty of perjury:

1. I am employed as a Contract Specialist for the United States Navy and have held that position since 2004. I am presently stationed at the Naval Station in Newport, Rhode Island.

2. When seeking contracting services, the Navy issues general Requests for Proposals (RFP) which outline the services the contractor will be required to provide and the terms to which it will be required to adhere. The terms of the RFP, once signed by the contractor's designated representative, become the basic terms of the contract.

3. On December 11, 2000, the Navy issued a document entitled "Solicitation, Offer, and Award" relating to contract number N62472-00-D-0800 to conduct "new construction, alteration, renovation, maintenance, demolition and design build projects" relative to various Naval construction projects in the Northeastern part

of the United States. On June 5, 2000, Triton became the designated offeror on the contract. Exhibit 1 attached to this Declaration are excerpts from the basic contract the Navy awarded to Triton.

4. On April 11, 2002, the Navy sent a formal award letter to Triton, Ex. 8, and issued Task Orders to Triton for specific construction projects. Task Order Number 3 was for the construction of a Surface Warfare Officer School (SWOS) at the Naval Station in Newport. See Ex. 5. Task Order Number 3 specifically incorporates all the terms of the original contract. See e.g. Ex. 1 59-61; Ex. 5 at Box 1.

5. After the Navy awarded Triton the construction contract for the SWOS Building, Triton subcontracted the construction of the Building to the Haskell Corporation. Haskell in turn subcontracted the painting of the SWOS to MacKenzie Corporation.

6. Exhibit 5 is the specific task order for the design and building of the SWOS Building in Newport and was executed by John J. Lewis, V.P. of Triton on April 11, 2002 (see box 16). The executed acceptances states:

> The contractor hereby accepts the offer represented by the numbered purchase order as it may previously have been or is now modified, subject to all of the terms and conditions set forth, and agrees to perform the same.

7. The contract dictated that Triton was responsible for "superintend[ing]" the work at the site:

> At all times during performance of this contract and until the work

> is completed and accepted, the Contractor shall directly superintend the work or assign and have on the worksite a competent superintendent who is satisfactory to the Contracting Officer and has authority to act for the Contractor.

Ex. 1, at 122, Section 52.236-6.

8. The superintendent reported to Triton's general manager for the contract who was to be the "focal point for all work and [was] shall be responsible for all coordination under the contract" and ensuring "compliance with all provisions of the contract." Ex. 1 at 26.

9. The contract required Triton to procure and maintain during the entire period of performance under the contract a minimum comprehensive general liability coverage of $500,000 per occurrence. Id. at 10-11.

10. The contract also specifically provided that Triton would be required to comply with the pertinent provisions of the U.S. Army Corps of Engineers Safety and Health Requirements Manual, EM 385-1-1. Ex. 1, at 122, Section 52.236-13(c). The EM 385-1-1, dated September 3, 1996 in effect at the time provided that "[a]cessways shall be inspected daily and maintained in a safe manner" and that they shall be "kept free of ice, snow, grease, mud, debris or any other material equipment which could obstruct passage, cause a tripping hazard, or render them unsafe in any other way . . . ." Ex. 2, Section 21.A.13.

11. The "Accident Prevention" section of the contract further provides that the contractor shall ensure that any additional measures the contracting officer determines to be reasonably necessary for the purposes of the construction are

taken. Ex. 1, at 122, Section 52.236-13 ¶(b)(3). The contract specifies that as part of these additional measures, Triton is to develop "Project Safety Procedures" for the contract.

12. In July 2002, Triton and the Haskell Company submitted "Project Safety Procedures" which provided that the prime contractor and any subcontractors and vendors would be required to comply with the policies in the safety plan as well as the EM 385-1-1. Ex. 3, at 2. Section 101, "Responsibility," of the Procedures states:

> Ultimate responsibility for the safety and health of employees working on this project lies with the Project Superintendents. However, as with any effective safety program, every employee involved in this project must assume responsibility for the safety and health of themselves and their co-workers.

Id. at 14.

13. The contract provided that if the Navy become aware of any noncompliance with the accident prevention requirements under the contract, or any condition which posed a serious or imminent danger to the health and safety of the public or Government personnel, the contracting officer could notify Triton immediately and request corrective action to be taken. If Triton were to fail to take corrective action, the Navy would have been permitted to issue an order stopping all work on the project. Ex. 1 at 122.

14. Pursuant to the terms of the Contract, Triton retained all responsibility for the construction site, including safety at the site, until Triton completed its work and the Navy accepted work completed on the project on March 17, 2004. Exs. 4, 9.

15. I have read the Plaintiff's Amended Complaint in this case. Although in the Amended Complaint the Plaintiff identifies the site of his fall as the Submarine Simulator Building, Building P-416, there are no submarine simulator buildings in Newport.

16. Plaintiff's Report of Injury submitted in conjunction with his Worker's Compensation Claim lists 1362 Taylor Drive, Newport, Rhode Island, as the location of his accident. 1362 Taylor Drive in Newport is the location of the SWOS Building. Ex. 7, at 7, Box 8 "Injury Information, Complete Address where Accident Occurred."

17. In addition, at paragraph twenty-eight in the Amended Complaint, the Plaintiff alleges that he fell approximately 10 to 15 feet outside the exit of the SWOS building.

18. Attached is Exhibit 6, which is an architectural site plan for the construction site for Task Order 3, the SWOS building.

19. The limit of construction is designated by a broken line (- - - - -) and the scale is 1" = 30'.

20. As is evidenced by the limit of construction on Exhibit 6, the shortest distance between the SWOS building and the limit of construction is on the west side of the building and is approximately 30'.

21. Although the Navy's contract with Triton was amended several times, none of these amendments altered the delegation to Triton for overall responsibility for maintaining the safety of the site and to adhere to the EM 385-1-1 in effect at the

time.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this the ______ day of April 2007.

_________________________________

DAVID J. BERGER
Contract Specialist
United States Department of the Navy