# Project Safety Procedures

APPROVED

## SWOS Applied Instruction Building

**Newport, Rhode Island**

**Contract N62472-00-D-0800 T.O. 003**

**July 2002**

# Triton Marine
# The Haskell Company

TRITON

# Safety

Safety is of the utmost importance in the daily operations of Triton Marine Construction. Each of our employees has the responsibility to make the safety of themselves, and coworkers, a basic concern. This objective is fundamental to the well being of the worker, as well as to the efficient operation of our business.

Safety saves; both lives and money. ***Monetary bonuses for all projects is predicated on the project's safety record.*** Triton Marine Construction realizes that there exist health and safety risks in the business of construction. We also believe that through a conscientious and dedicated effort by all employees these inherent risks can be greatly reduced or eliminated.

In addition to established corporate safety policies Triton Marine Construction employees, subcontractors and consultants have the responsibility to comply with all Federal, State, and Local Regulations related to safety and health programs.

Throughout the execution of the contract between Triton Marine Construction and the Owner, the prime contractor, and any sub-contractors and vendors, will be required to comply with the policies indicated in the Site Specific Safety Plan , as well as the policies and procedures shown in the "United States Army Corps of Engineers (USACE) Safety and Health Requirements Manual (EM 385-1-1), 1996.

In order to monitor the safety procedures and policies, Mr. Gene Spillane, of The Haskell Company, Inc. is hereby appointed the Site Safety & Health Officer (SSHO); and the site specific safety plan shall be prepared and submitted under his direction. He (SSHO) shall have full authority to suspend work in the interest of Safety. As the Site Safety & Health Officer he will report directly to the Triton corporate Safety Officer with all issues that cannot be solved on site with the project management team. The Corporate Safety Office is Mr. Jeff D. Tompson. In the event Mr. Tompson cannot provide a suitable solution he has authority and responsibility to report to me immediately. The Site Safety Officer has the authority to shut the job down, placing personnel and equipment in a safe condition in the event of safety concerns that put personnel, property or equipment at risk

***It is the safety goal of this project to improve our safety experience modifier, suffer no lost time accidents and leave our client satisfied that we did everything humanly possible to perform this project safely.***

Triton Marine Construction Corp

Jon B. Archer

Jon B. Archer
Vice President

## TABLE OF CONTENTS


| | |
|---|---|
| **Section 1** | Signature Sheet |
| **Section 2** | Background Information |
| **Section 3** | Policy Statement |
| **Section 4** | Responsibilities and Line of Authority |
| **Section 5** | Subcontractors and Suppliers |
| **Section 6** | Training |
| **Section 7** | Safety and Health Inspections |
| **Section 8** | Disciplinary and Enforcement Action |
| **Section 9** | Accident Reporting |
| **Section 10** | Medical Support |
| **Section 11** | Personal Protective Equipment |
| **Section 12** | Plans Required by the Safety Manual |

| | |
|---|---|
| **Section 100** | Policy Statement and Responsibility |
| **Section 200** | Concrete and Masonry |
| **Section 300** | Excavation and Trenching |
| **Section 400** | Ladders |
| **Section 500** | Electrical |
| **Section 600** | Lockout, Tag and Try |
| **Section 700** | Fall Protection |
| **Section 800** | Barricades |
| **Section 900** | Scaffolding |
| **Section 1000** | Powder Actuated Tools |
| **Section 1100** | Mobile Cranes |
| **Section 1200** | Steel Erection |
| **Section 1300** | Powered Aerial Lifts |
| **Section 1400** | Fire Protection and Prevention |
| **Section 1500** | Demolition |
| **Section 1600** | Hurricane and Severe Storm Plan |
| **Section 1700** | Confined Space Entry |
| **Section 1800** | Housekeeping and Sanitation |
| **Section 1900** | HazCom Program |
| **Section 2000** | Emergency Response Plan |
| **Section 2100** | Respiratory Health Control Program |
| **Section 2200** | Lead Safety Program |
| **Section 2300** | Asbestos Program |
| **Section 2400** | Drug and Alcohol Abuse Program |

| | |
|---|---|
| **Section 13** | The Assurance of EM385-1-1 |

# SECTION 1: SIGNATURE SHEET

Project Manager: Ric Byerly

Signature: *[signature]*

Prepared By: James A. Lineberger, CSP
(305)684-3577

Signature: *[signature]*

Approved By: Lance Simons, Safety Program Manager
(904)357-4967

Signature: *[signature]*

Jon Archer – Triton Marine
(360)373-7090

Signature: *[signature]*

Joe Narby – The Haskell Company
(904)791-4616

Signature: *[signature]*

# SECTION 4: RESPONSIBILITIES AND LINE OF AUTHORITY

Assures establishment and execution of safety plan.

Jon Archer – Triton Marine
Joe Narby – The Haskell Company

Coordinates and establishes safety plan. Supports superintendent in procedure and policy adherence. OSHA qualified.

Ric Byerly - Project Manager

Overall responsibility of Project Safety Plan establishment and execution.

Lance Simons - Safety Program Manager

Inspects periodically for compliance of the established safety procedures and policies.

James A. Linenberger, CSP - Regional Safety Manager

Insures on a daily basis, adherence to safety procedures and policies. Conducts weekly safety meetings. OSHA qualified.

Gene Spillane - Project Superintendent/Safety Officer

Subcontractor Qualified Persons

Confined Entry – to be determined
Crane Operator – to be determined

**Safety Program Organization**
**SWOS Applied Instruction Building**
**Naval Station Newport, Rhode Island**



| | |
|---|---|
| CREDENTIALS | Simons joined The Haskell Company in 1982. He has over 10 years' experience in supervising and implementing safety procedures for large projects under construction throughout the U.S. During his tenure, Simons has served in both field and corporate safety-related roles, including on-site safety management, subcontractor safety coordination and corporate training. With over 20 years of construction experience, he brings a construction understanding and perspective to the corporate safety role and its implementation. |
| RESPONSIBILITIES | As manager of safety, Simons is responsible for safety and health performance of Haskell's construction operations. He is instrumental in establishing rules and programs designed to promote safety and to make these rules and programs known to all construction employees. Simons makes necessary safety training and materials available, including first-aid training and certification for on-site project management. He conducts periodic inspections of all job sites, maintains records and continually monitors all aspects of the safety program for effectiveness. Simons' responsibilities include review and investigation of all serious accidents, in addition to ensuring that measures are taken to prevent future occurrences. |
| RELEVANT PROJECT EXAMPLES | **USPS Processing & Distribution Facility** – 300,000-s.f. distribution facility located in Charleston, West Virginia.<br><br>**Titan IV SRMU Facility** – Titan IV solid rocket booster storage facility located in Clay County, Florida.<br><br>**Inn at Ft. Bliss** – 50-room expansion and renovation in El Paso, Texas.<br><br>**Pembroke Pines Facility Management** – Safety management related to all municipal facilities located in the City of Pembroke Pines, Florida. |
| EDUCATION | Bachelor of Science in Business Management<br>California Coast University<br><br>Occupational Safety; Safety Training Methods; Safety Management Techniques<br>Georgia Institute of Technology |
| REGISTRATIONS/ LICENSES | OSHA Construction Safety Health (OSHA 500)<br>OSHA Competent Person - Trenching/Excavation<br>OSHA Competent Person – Scaffolding<br>OSHA Compliance<br>Red Cross First Aid/CPR |

# JAMES A. LINENBERGER
## REGIONAL SAFETY DIRECTOR

**CREDENTIALS**

Linenberger has 24 years of experience in conducting safety audits and inspections. He has developed and implemented safety training programs, procedures and policies. Linenberger holds a CSP designation, is an OSHA Outreach trainer and has served as an OSHA compliance officer.

**RESPONSIBILITIES**

As regional safety director, Linenberger is a multi-project safety manager supporting projects within his region. He is responsible for ensuring that all project supervision and field employees are adequately trained in, and are abiding with, Haskell's safety policies and project safety rules.

Linenberger also performs on-site safety audits and administers project orientations and training to Haskell personnel.

**RELEVANT PROJECT EXAMPLES**

Mid-Atlantic and Southeastern U.S. Regional Training Director

Academic Village Charter Schools – South Florida

Haskell Management Services – Pembroke Pines, Florida

Miami Performing Arts Center – Miami, Florida

Port of Miami – Miami, Florida

**EDUCATION**

Arapahoe Community College, Littleton, Colorado – Occupational Heath and Safety
Board of Certified Safety Professionals CSP
OSHA – Outreach Trainer for Construction Industry Standards
NCCER Wheels of Learning – Safety Trainer
Crane Inspection and Certification Bureau Trainer

# KENNETH S. DUNCAN
## *PROJECT MANAGER*

**CREDENTIALS**

Ken joined The Haskell Company in 2001 as a project manager in Haskell's Civil Diversified group. Prior to joining Haskell, he was construction administrator for a reputable design firm overseeing multiple projects for the owner. Ken also has a previous background as project manager for a large commercial building contractor.

**RESPONSIBILITIES**

As project manager, Ken directly manages project construction and is involved from early development through project completion. He prepares estimates, generates project schedules and establishes project cost control systems. Ken is a main point-of-contact during construction and assures project completion to each owner's satisfaction. He is also responsible for all operations, generating payment requisitions and securing prompt payment, in addition to direct supervision of project superintendents.

**RELEVANT PROJECT EXAMPLES**

**P.M. Wells Charter School** in Kissimmee, Florida

**Tropicana Midway II** in Ft. Pierce, Florida

**Atlantic Dry Dock Marine Pedestrian Bridge** in Jacksonville, Florida

**Life Chiropractic College, Gymnasium and Wellness Center** in Marietta, Georgia

**Summit Condominiums** in Gatlinburg, Tennessee

**Carmike Cinemas Construction Program** in Chattanooga, Tennessee

**Galleria 700 Office Tower** in Atlanta, Georgia

**Digital Corporation HQ/CSC Facility** in Alpharetta, Georgia

**Atherton Place** in Marietta, Georgia

**Abernathy Towers** in Atlanta, Georgia

**Days Inn Hotel** in Smyrna, Georgia

**EDUCATION**

Bachelor of Science in Civil Engineering
Tennessee Technological University

## SECTION 5: SUBCONTRACTORS AND SUPPLIERS

The following list of Subcontractors and Suppliers planned for use are provided as reference only. All correspondence with each will be directed through the Triton and/or Haskell project manager. As subcontractors and suppliers are contracted they will be added to the existing directory.

| Scope | Name | Contact | Phone |
|---|---|---|---|
| General Contractor | The Haskell Company | Kenneth Duncan | (904)791-4260 |
| Sitework | Cardi Corporation | Wayne Clarke | (401)739-8300 |

As the General Contractor, The Haskell Company will require each subcontractor to respond promptly to issues identified during safety inspections, audits, or personnel safety concerns. Each will be required to provide a designate to participate in the project safety committee.

Each subcontractor employee or new hire will be required to participate in The Haskell Company safety orientation program. Each participant will receive identification indicating they have attended. In the event site personnel are noted to not have attended the orientation program, that individual will be directed to the Haskell project office for the required training.

Each subcontractor will provide The Haskell Company with copies of daily reports, safety tool box meetings, accident reports, and competent person certification.

# SECTION 8: DISCIPLINARY AND ENFORCEMENT ACTION

## 1.0 Purpose

Triton Marine/The Haskell Company assumes that each of its employees and subcontractor's employees is a responsible, mature person who is willing and able to perform work in a safe manner.

Therefore, all employees are subject to disciplinary action concerning violation(s) of the company and project safety rules. The superintendent must be sure that the employee has had an opportunity to become acquainted with and understands the safety program and rules.

When an employee is found to be in violation of the company's accident prevention program, their superintendent shall instruct the employee to immediately correct the violation. The superintendent will establish whether or not the employee knew a rule/regulation/procedure was being violated (i.e., had the employee received the proper instruction or training).

The superintendent will listen objectively to the employee's reasons or justification for the safety violation. If it is determined that the employee's actions were excusable, or the violation has been corrected, the superintendent will inform the employee.

If the situation warrants, the employee's superintendent will formally discipline the employee and document the infraction accordingly.

## 2.0 Scope

This procedure applies to all employees on the project with individual procedures including subcontractor employees as described within. This procedure does not limit or preclude the Superintendent or his designated representative from taking immediate and stern measures to terminate or ban from the jobsite any person displaying willful, flagrant, insubordinate or abusive behavior in regards to the safety and health of themselves or others.

## 3.0 Disciplinary Steps

The process and procedures for safety violations are listed below. Formal action consists of (1) written warning, (2) second written warning with suspension for the balance of the day, and (3) termination for Triton Marine/Haskell employee, or removal from jobsite for subcontractor employee.

### 3.1 Verbal Warnings

Verbal warnings to employees are considered "instructive" and are not counted as part of the formal disciplinary process.

3.2 First Notice for Employee

Written warning is given. The superintendent must document the violation, advise the employee of such notice, keep the notice in the employee's personnel file and send a copy to Human Resources. (Refer to Disciplinary action Report Form in Appendix.)

3.3 Second Notice for Employee

Written warning is given. The superintendent must document the violation, advise the employee of such notice, keep the notice in the employee's personnel file and send a copy to Human Resources. In addition, the employee is suspended for the balance of the day without pay.

3.4 Third Notice for Employee

Termination occurs when there has been a previous incident or problem. Termination for violations is mandatory for employees who continually fail to follow safe work practices and who show disregard for their fellow workers. Their termination process includes a written notice.

3.5 First Notice for Subcontractor Employee

Written or verbal notification is given to the employee's supervisor by the supervisor and documented by each. The employee's supervisor is responsible to inform the employee.

3.6 Second Notice for Subcontractor Employee

Same as first notice with additional balance of day suspension from the jobsite for the employee.

3.7 Third Notice for Subcontractor Employee

Employee's supervisor is asked to remove employee from the jobsite immediately. Future access to the jobsite is denied.

End of Section

# DISCIPLINARY ACTION REPORT

**Project Name:** ______________________________ **Project Number:** ________________

**Date:** _______________ **Employee:** ________________________________________

☐ **Subcontractor Employee** ***(Subcontractor):*** ______________________________________

**Superintendent:** __________________________ **Crew/Craft:** ____________________

☐ **First Warning** ☐ **Second Warning** ☐ **Suspension** ☐ **Termination**

**Violation** (explain in detail):

______________________________________________________________________________

______________________________________________________________________________

______________________________________________________________________________

______________________________________________________________________________

**Action taken:**

______________________________________________________________________________

______________________________________________________________________________

______________________________________________________________________________

***Report Submitted by:***

______________________________________ **Date:** ________________________

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**For Office Use Only:**

**Documents in employee's file:** _________________________ **Date:** ________________

**Comments:**

______________________________________________________________________________

______________________________________________________________________________

**Signature/Title** ____________________________ **Employee Signature:** _______________

Form 209 297

## 100. POLICY STATEMENT

Maintaining a safe and healthy work environment is of prime importance to Triton Marine/The Haskell Company. Safety will not be subverted in the interests of time or profit. Our safety rules and regulations are developed for the protection of our employees, subcontractors, our customer's employees, and the public.

These rules rely upon a commitment by the management of these companies to continuously improve our safety process through training and accident prevention programs unequaled in the construction industry.

We call upon you, our employees, to accept the challenge to eliminate accidents and, thereby, prevent needless injuries to our personnel.

## 101. RESPONSIBILITY

Ultimate responsibility for the safety and health of the employees working on this project lies with the Project Superintendents. However, as with any effective safety program, every employee involved in this project must assume responsibility for the safety and health of themselves and their co-workers. This joint possession of responsibility will be accomplished through communication of these Safety Procedures and employee orientation and training.

## 102. EXCEPTIONS TO PROCEDURES

Any exceptions to the project safety procedures outlined in this manual must be approved by the project superintendent prior to proceeding.

End of Section

# 700. FALL PROTECTION

## 1.0 Purpose

This procedure establishes minimum requirements for eliminating fall hazards through application of proper guarding policies and equipment, and for the use of personal fall arrest systems when fall hazards cannot be controlled.

## 2.0 Scope

This procedure is applicable to all personnel performing work at this location. This project has been designated as a 100% fall protected project, thus providing full and constant protective measures for all personnel working at elevations of **6** feet (1.83 meters) or higher.

## 3.0 Fall Hazard Prevention

### 3.1 Guarding Requirements and Equipment

3.1.1 The following openings shall be appropriately protected:

3.1.1.1 Every stairway floor opening shall be guarded by a standard railing on all exposed sides.

3.1.1.2 Every ladderway floor opening or platform shall be guarded by standard railings and toeboards on all exposed sides.

3.1.1.3 Every wall opening from which there is a drop of more than six feet (1.83 meters) shall be guarded by a railing, halfdoor, or equivalent barrier.

3.1.1.4 Every open-sided floor or platform six feet (1.83 meters) or more above an adjacent floor or ground level shall be guarded by a standard railing on all open sides.

3.1.1.5 Every manhole floor opening shall be guarded by a standard manhole cover which need not be hinged in place. When open or uncovered, every manhole floor opening or temporary floor opening shall be guarded by a standard railing, or the manhole opening shall be constantly attended by someone.

3.1.2 Temporary barricades of wood, or yellow or red barricade tape, may be used to warn against fall hazards on floor levels or open pits, sumps, holes, valve boxes,

open trenches, and ditches less than four feet (1.22 meters) deep. Standard signs designating the nature of the hazard shall be posted on all sides of the barricaded area. (Refer to Section 1000, Barricade Procedure)

3.1.3 Covers shall be provided to protect personnel from the hazards of open pits, tanks, vats, or ditches when standard railings or temporary barricades are not provided.

3.1.4 Toeboards shall be provided with railings wherever, beneath the open sides, persons can pass, there is moving machinery, or there is equipment onto which falling materials could create a hazard.

3.1.5 When the type of work being performed on the platform could result in material falling through the handrails onto personnel below, consideration should be given to providing a meshed screen between the toeboards and top handrail.

3.1.6 Every flight of stairs having four or more risers shall be equipped with standard stair railings on both sides of the stairs. Railings should be grasped by employees to prevent slips and falls when using stairs.

3.1.7 Portable rung and cleat ladders shall, where possible, be used at such a pitch that the horizontal distance from the top support to the foot of the ladder is one-quarter of the working length of the ladder (the length along the ladder between the foot and the top support). The ladder shall be so placed as to prevent slipping, or it shall be lashed, or held in position.

3.2 Construction Specifications

3.2.1 A standard railing shall consist of a top rail 42 inches (106.7 cm) above the floor surface with one intermediate rail. A stair railing of similar design shall not be more than 34 inches (86.4 cm) above the nose of the stair tread. The structure shall be capable of withstanding a load of at least 200 pounds applied in any direction at any point on the top rail.

3.2.2 For wood railings, the posts shall be of at least 2" x 4" (5.08cm x 10.16cm) stock spaced not to exceed 6 feet (1.83 meters). For pipe railings, posts and top and intermediate railings shall be at least 1.5 inches (3.8 cm) nominal diameter with posts spaced not more than 8 feet (2.44 meters) on centers.

3.2.3 A toeboard shall be 4 inches (10.2 cm) in height from its top edge to the level of the floor with not more than 1/4 inch (.64 cm) clearance above floor level. It can be made of any substantial material either solid or with openings not over one inch

(2.54 cm) in greatest dimension.

3.2.4 Floor opening covers may be of any material that meets the strength requirements of ¾" plywood or equivalent. Floor opening covers may not project more than one inch (2.54 cm) above the floor unless the cover is barricaded.

3.2.5 A floor opening cover shall be marked "Floor Cover - Do Not Remove."

3.2.6 When barricade tape is used, it shall be a minimum of 36 inches (91.4 cm) above floor level and at least 36 inches (91.4 cm) from the edge of the opening or excavation.

3.2.7 Barricade tape is not to be used for anything other than its intended use (e.g. rigging, securing material, tying electric cords, etc.)

3.2.8 In addition to barricades, flashing yellow lights shall be used at night around excavations subject to vehicle traffic.

4.0 Personal Fall Arrest System Procedure

4.01 Use

4.1.1 **Any work from heights of six (6) feet (1.83 meters) or more where there is no fixed fall protection shall require the use of a personal fall arrest system.**

**Exceptions:**

- Portable Ladders
- Vehicles

4.1.2 Regardless of height, full body harnesses shall be used in conditions specified in paragraph 3.1.1.4 of this section where standard railings have not been provided on walking working surfaces above or adjacent to dangerous equipment, open pits and tanks containing hazardous substances (e.g. sewer distribution boxes) and similar hazardous arrangements.

4.1.3 Body harnesses shall be anchored utilizing a shock absorbing lanyard or be attached to a lifeline by using a lanyard and rope grab combination. The lanyard or lifeline shall be securely attached to substantial members of the structure or to securely rigged lines which will safely suspend the worker in case of a fall. Sprinkler pipes, handrails, and electrical conduit shall not be used for this purpose.

4.1.4 Multiple lanyards may be required in some cases to ensure that fall protection is never compromised. Prior to unhooking lanyards which pass lifeline anchorage point, second lanyard is attached and tie-off is maintained.

4.1.5 Vertical and horizontal lifelines shall be installed using OSHA 1926.502 Appendix C as a guideline.

4.1.6 All rope grabs shall be compatible with the lifeline to which they are being attached.

4.1.7 All connectors should be properly secured and of a self-locking design.

4.1.8 Only body harnesses, lanyards, and lifelines approved by NFPA #1983 and ANSI A10.14 shall be used.

4.2 Inspection

4.2.1 An initial inspection of body harnesses, lanyards, and lifelines shall be made by a competent person as the equipment is received on site.

4.2.2 The inspector shall look for the manufacturer's permanent tag affixed to the body harness. If no tag is found, the harness shall be rejected.

4.2.3 The inspector shall look for frayed webbing, deformity of any metal parts, breaks, tears, and incomplete riveting or sewing. If any of these are found, the equipment shall not be accepted, and shall be returned to the manufacturer.

4.2.4 Each piece of equipment shall be inspected before and after each use. Inspect for frayed webbing, deep cuts, deformed metal parts, loose rivets, breaks, and tears. If any of these defects are found, the equipment shall not be used and shall be removed from service and destroyed.

4.2.5 Any fall arrest system equipment that has been subjected to a fall shall be taken out of service and destroyed.

5.0 Training

Employees shall be properly trained in the use of personal fall arrest system equipment prior to its actual use. This training includes discussing the contents of this procedure.

6.0 Definitions

6.1 Body Harness: A design of straps which may be secured about the employee in a manner to distribute the fall arrest forces over at least the thighs, pelvis, waist, chest and shoulders with means for attaching it, to other components of a personal fall arrest system.

6.2 Connector: A device which is used to couple (connect) parts of the system together. It may be an independent component of the system (such as a carabiner), or an integral component of part of the system (such as buckle or D-ring sewn into a body harness, or a snap-hook spliced or sewn to a lanyard or self-retracting lanyard).

6.3 Fixed Fall Protection: Standard railings, partitions, walls, pipework, structural steel or other structures that would, because of their construction and location, prevent a person from falling from an elevation.

6.4 Floor Hole: Any opening in any floor, platform, or pavement that measures less than 12 inches (30.5 cm) but more than 2 inches (5.1 cm) in its least dimension.

6.5 Floor Opening: Any opening in any floor, platform, or pavement measuring 12 inches (30.5 cm) or more in its least dimension through which persons may fall.

6.6 Lanyard: A flexible line of rope, or nylon strap which is used to secure the body harness to a deceleration device, lifeline, or anchorage. The lanyard should be of the shock absorbing type with double locking hooks.

6.7 Lifeline: A component consisting of a flexible line for connection to an anchorage at one end to hang vertically (vertical lifeline), or for connection to anchorages at both ends to stretch horizontally (horizontal lifeline), and which serves as a means for connecting other components of a personal fall arrest system to the anchorage.

6.8 Personal Fall Arrest System: A system used to arrest an employee in a fall from a working level. It consists of an anchorage, connectors, a body harness and may include a lanyard, deceleration device, lifeline, or suitable combinations of these.

6.9 Rope Grab: A deceleration device which travels on a lifeline and automatically frictionally engages the lifeline and locks so as to arrest the fall of an employee.

6.10 Standard Railing: A vertical barrier erected along exposed edges of a floor opening, wall opening, ramp, stairs, platform, or runway to prevent falls of personnel.

6.11 Standard Toeboard: A vertical barrier at floor level erected along exposed edges of floor openings, platforms, or ramps to prevent falls of materials.

6.12 Wall Opening: Any opening in a wall greater than 30 inches (76.2 cm) high and 18 inches (45.7 cm) wide with the bottom edge less than 39 inches (99.1 cm) above the floor or walking surface.

7.0 Fall Protection Plan

7.1 All contractors whose employees may be exposed to fall hazards are required to submit a written fall protection plan prepared by a qualified person to the Project Superintendent for review/approval prior to commencement of work.

End of Section

# DESIGNATED COMPETENT PERSON FORM

Company: ______________________________

Job Location: ______________________________

Job Number: ______________________________

Activity in which engaged:

Electrical Assured Grounding Program ____________

Equipment Maintenance/Inspection ____________

Scaffolding Inspection/Training ____________

Trenching and Excavation ____________

Other (Explain) ____________

Designation:

The following person or persons are hereby designated as competent persons and are responsible for the activities indicated, in accordance with OSHA 9126.32 (f).

| Name | Title or Craft |
| --- | --- |
| 1. ____________ | ____________ |
| 2. ____________ | ____________ |
| 3. ____________ | ____________ |

Signatures of Competent Persons:

1. ____________
2. ____________
3. ____________

Date: ____________

Designated by: ____________

____________

(Supervisor's Signature)